# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| ERIC GEORGE GOLDEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 12-cv-7743 |
| | ) | |
| ILLINOIS DEPARTMENT OF | ) | Judge John Z. Lee |
| CORRECTIONS, SALVADOR | ) | |
| A. GODINEZ, MARCUS HARDY, | ) | |
| MICHAEL LEMKE, SANDRA | ) | |
| FUNK, NANCY POUNOVICH, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Eric Golden, an inmate at Stateville Correctional Center in Crest Hill, Illinois, claims that Defendants are violating the Americans with Disabilities Act and the Rehabilitation Act by failing to provide him with reasonable accommodations for his disability. Golden has moved for summary judgment, and Defendants—the IDOC and various former and current employees—have as well. For the reasons given below, the Court denies both motions but dismisses the individual defendants from the case because they are not amenable to suit under the ADA or the Rehabilitation Act.

## I. Factual and Procedural Background

The following facts are undisputed except where noted. Golden lost his left leg below the knee following a surgical amputation prior to his incarceration at Stateville. *See* Pl.'s SOF ¶ 4; Defs.' SOF ¶ 11. He requires a prosthetic leg to walk.

*See* Pl.'s SOF ¶¶ 8, 11. He received his current prosthesis in 2013 while incarcerated at Stateville, at the order of a doctor at the facility. *See* Defs.' SOF ¶ 15.

Because of Stateville's physical layout, even disabled inmates must walk substantial distances and up and down stairs in order to utilize the services the facility offers. *See* Pl.'s SOF ¶ 10. To the knowledge of Stateville's ADA Facilities Coordinator, Nancy Pounovich, Stateville does not house any wheelchair-bound inmates. *See id.* ¶ 23; Pl.'s Ex. G, Pounovich Dep. at 69.[1]

Defendants have provided Golden with various aids and special permits because of his disability. The aids include the prosthesis itself, grab bars in the shower, and shower chairs. *See* Defs.' SOF ¶¶ 60. The permits include a "slow walk" permit that allows him to walk at his own pace, a permit that allows him to be housed in a cell on the first or second floor of the prison, and a "low bunk" permit. *See id.* ¶¶ 37, 39, 41. Golden has requested a "lay-in" permit, which would require prison staff to bring his meals to his cell, but he has not been granted one. Defs.' SOF ¶ 36.

Golden testified that, despite the aids and permits he has received, he has difficulty walking. He experiences pain and abrasions from the friction between the prosthesis and his residual limb, especially when walking up and down stairs. *See* Pl.'s SOF ¶ 11; Defs.' SOF ¶ 20. He also experiences difficulty with balance and has

---

[1] Defendants deny that Stateville houses no wheelchair-bound inmates but cite no evidence in support. *See* Defs.' Resp. Pl.'s SOF ¶ 23.

fallen several times while showering or attempting to use the toilet.² *Id.*; Defs.' SOF ¶¶ 34, 46. The shower grab bars are not always effective at preventing falls because Golden must walk across a wet shower floor to get to them. Pl.'s Resp. Defs.' SOF ¶ 60. So far, he has not been seriously injured in a fall, *see* Defs.' SOF ¶¶ 34, 36, but he fears future falls, *see* Pl.'s SOF ¶ 11.

Golden testified that he misses three to four meals in the cafeteria per week because of the pain walking causes. *See* Defs.' SOF ¶ 24. When he misses a meal, he purchases food for himself from the commissary. *Id.* ¶ 25. Also as the result of pain from walking, Golden misses communal exercise about four times per month and religious services two times per month. *See id.* ¶¶ 27, 33. Defendants do not deny that Golden misses these events because of his disability. *Id.* ¶¶ 24, 26, 27, 33.

At least twice, Golden has requested a transfer from Stateville to Dixon Correctional Center, a facility that his prison counselor told him is ADA compliant. *See id.* ¶¶ 52, 56; Defs.'s Ex. A, Golden Dep. at 21. Golden's first transfer request was approved by the warden of Stateville but ultimately was denied by the IDOC's Office of the Transfer Coordinator because the request had not been approved by the Office of Health Services. *See* Pl.'s SOF ¶ 12; Defs.' SOF ¶ 52. Golden's second request was also approved by the warden but then denied by the Office of the

---

² In responding to Golden's statement of facts, Defendants denied that Golden's prosthesis causes abrasions and denied that he has ever fallen. *See* Defs.' Resp. Pl.'s SOF ¶ 11. But the only evidence Defendants cited in support of their denial is Golden's own testimony that he *does* experience pain and abrasions and *has* fallen, *see id.*; Defs.' Ex. A, Golden Dep. at 24, 48. Moreover, Defendants' own statement of facts and opening brief state that Golden testified he has fallen repeatedly and suffers from abrasions on his residual limb, *see* Defs.' SOF ¶¶ 34, 36; Defs.' Mem. Supp. Summ. J./Resp. Br. at 3–5, and Defendants have not disputed the truthfulness of that testimony.

3

Transfer Coordinator, this time because Golden was "appropriately placed." *See* Pl.'s SOF ¶ 15; Defs.' SOF ¶¶ 56, 57, 59.

Stateville is a maximum-security facility, while Dixon is a medium-security facility, *see* Defs.' SOF ¶ 51; Ex. B at ¶ 33, and there is evidence that the difference in security level played a role in the denial of Golden's second transfer request. Sandra Funk, the IDOC's Transfer Coordinator, explained in her deposition that, based on her review of the records, one factor that weighed against transferring Golden to a lower security facility was that he is designated as a suspected gang leader. Defs.' Ex. D, Funk Dep. at 35. Asked whether the practical effect of the suspected gang-leader designation is an "absolute prohibition" on transfer to a lower-security facility, Funk responded that it is "not absolute but it is something that's considered." *Id.* She also testified that prison officials besides the warden, including an assistant warden and a correctional counselor, supported allowing Golden to transfer because of his disability. *Id.* at 37–40.

After Golden's last transfer request was denied, he first exhausted his administrative remedies and then filed this lawsuit, in which he seeks damages[3] as well as declaratory and injunctive relief. He and Defendants have filed cross motions for summary judgment.

---

[3] Although a suit for damages under Title II of the ADA is potentially barred by Illinois's sovereign immunity, *see Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 672 n.5 (7th Cir. 2012), sovereign immunity is a waivable affirmative defense, *Sung Park v. Indiana Univ. Sch. of Dentistry*, 692 F.3d 828, 830 (7th Cir. 2012), and the IDOC did not raise that defense in its answer or its briefs. In any event, damages are available under the Rehabilitation Act, and a plaintiff cannot recover twice for the same injury. *Jaros*, 684 F.3d at 671–72.

## II. Legal Standard

The Court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court gives "the non-moving party the benefit of conflicts in the evidence and reasonable inferences that could be drawn from it." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 794 (7th Cir. 2013). In order to survive summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party "must establish some genuine issue for trial such that a reasonable jury could return a verdict in her favor," *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012).

## III. Analysis

This case involves a claim of disability discrimination under Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131–12165, and a disability discrimination claim under the Rehabilitation Act of 1973, 29 U.S.C. § 794. To succeed on a claim under Title II of the ADA, Golden must show that: (1) he is a qualified individual with a disability; (2) who was denied the benefits of a public entity's services, programs, or activities; and (3) such exclusion, denial of benefits, or discrimination was by reason of a disability. *See* 42 U.S.C. § 12132; *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015), *cert. denied*, 136 S. Ct. 321 (2015). One form of discrimination under the ADA is a failure to provide reasonable

accommodations for a disability, *see Love v. Westville Corr. Ctr.*, 103 F.3d 558, 560 (7th Cir. 1996), and this is the type of claim Golden has brought. The Rehabilitation Act is functionally identical to the ADA in the context of prisoner disability claims, *Wagoner*, 778 F.3d at 592, meaning the two claims may be considered in tandem.

### A. Individual Defendants

The individual defendants argue that Golden's claims against them should be dismissed because IDOC employees cannot be held liable under the ADA or Rehabilitation Act. Defs.' Mem. Supp. Summ. J./Resp. Br. at 14–15. They are correct. *See Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 670 (7th Cir. 2012) ("[E]mployees of the Department of Corrections are not amenable to suit under the Rehabilitation Act or the ADA."). Accordingly, Golden's claims are dismissed as to the individual defendants.

### B. Illinois Department of Corrections

Golden argues that the undisputed evidence establishes he is a qualified individual who has been denied reasonable accommodations for his disability. The IDOC argues that the undisputed evidence actually establishes that Golden has been provided with reasonable accommodations.[4]

---

[4] Another of Defendants' arguments, one that can be dispensed with quickly, is that Golden, because he complains of pain caused by his prosthesis, is really asserting a medical malpractice claim, though the "'ADA does not create a remedy for medical malpractice.'" *See* Defs.' Mem. Supp. Summ. J. at 13 (quoting *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996)). But Defendants also argue that Golden's prosthesis is one of the reasonable accommodations they have provided to him, *see id.* at 15, and they cannot have it both ways, arguing on the one hand that they have provided a reasonable accommodation and then arguing on the other hand that the pain caused by that accommodation is irrelevant.

6

1. **Qualified Individual**

A qualified individual with a disability is an individual "who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131. The IDOC concedes that Golden is a qualified individual with a disability. Defs.' Mem. Supp. Summ. J./Resp. Br. at 12.

2. **Denial of Services**

"Although incarceration is not a program or activity, the meals and showers made available to inmates are." *Jaros*, 684 F.3d at 672. Golden argues that his missing meals and other activities because of his disability constitutes a denial of services under the ADA and the Rehabilitation Act.

The IDOC does not dispute Golden's testimony that the pain he experiences while walking causes him to miss three to four meals per week, four communal exercise sessions per month, and two religious services per month. *See* Def.'s SOF ¶¶ 24, 27, 33. Instead, the IDOC argues that the accommodations Golden has received—the prosthesis and various permits—are sufficient because they allow him to access those services most of the time. Defs.' Mem. Supp. Summ. J./Resp. Br. at 11–13. In support, the IDOC quotes the Ninth Circuit opinion in *CERCPAC v. Health and Hospitals Corporation,* 147 F.3d 165, 168 (2d Cir. 1998), where the court

explained that disabled individuals are not entitled to "any particular level" of services. *Id.* at 12.

The point of *CERCPAC*, however, is that services must be provided on an equal basis to disabled and non-disabled individuals, whatever the level. 147 F.3d at 167–68. And the Seventh Circuit has made clear that a disabled prisoner who is denied access to services, even if only periodically, is denied services within the meaning of the ADA and Rehabilitation Act. *See Jaros*, 684 F.3d at 669, 672. In *Jaros*, the plaintiff, who walked with a cane because of osteoarthritis in his hip, alleged that his disability caused him to miss meals "on occasion" and to shower just once a week. *Id.* Based on these allegations, the Seventh Circuit held that the plaintiff had stated a plausible ADA/Rehabilitation Act claim because he was not "accessing meals and showers on the same basis as other inmates." *Id.*

Because there is no genuine dispute over whether Golden is denied services because of his disability, this issue is resolved in Golden's favor and need not be considered at trial. As explained below, the jury must consider instead whether the IDOC could reasonably have provided additional accommodations that would allow Golden to access prison services on the same terms as other inmates.

### 3. Requested Accommodation

Golden contends that the only way to accommodate his disability is to transfer him to a facility where he would not be required to walk long distances, walk over wet floors without support, or walk up and down stairs in order to access services. "Whether a requested accommodation is reasonable is highly fact-specific,

and determined on a case-by-case basis by balancing the cost to the defendant and the benefit to the plaintiff." *Dadian v. Vill. of Wilmette*, 269 F.3d 831, 838 (7th Cir. 2001). Evaluating the reasonableness of a particular accommodation in the prison context is particularly fact-intensive. *Holmes v. Godinez*, 311 F.R.D. 177, 226 (N.D. Ill. 2015). "Security concerns, safety concerns, and administrative exigencies [are] important considerations to take into account." *Love*, 103 F.3d at 561.

The IDOC argues that transfer to Dixon is not a reasonable accommodation because Golden is a suspected gang leader and Dixon has a lower security designation than Stateville. Defs.' Mem. Supp. Summ. J./Resp. Br. at 14. But Golden denies that he poses a security threat, pointing out that the warden at Stateville twice approved his transfer requests. Pl.'s Mem. Supp. Summ. J. at 5–6; Defs.' Ex. D, Funk Dep. at 37–40. Additionally, Sandra Funk, IDOC's Transfer Coordinator, testified that the suspected gang leader designation is not a categorical bar to transfer but is simply one factor to be considered. Defs.' Ex. D, Funk Dep. at 35; Pl.'s Reply Br./Resp. Br. at 21. Funk also testified that prison officials besides the warden, including an assistant warden and a correctional counselor, supported allowing Golden to transfer to Dixon because of his disability. Defs.' Ex. D, Funk Dep. at 37–40.

Based on this evidence, a reasonable jury could conclude that Golden's requested accommodation—transfer to a more accessible facility—would be a reasonable accommodation. A reasonable jury could also conclude that accommodations short of transfer, but more than what has been provided to date—

9

for example, granting Golden a lay-in permit so that his meals would be brought to his cell—would be reasonable. As a result, the IDOC's motion for summary judgment must be denied.

On the other hand, a reasonable jury could conclude that the IDOC has done all that can reasonably be required of it to accommodate Golden's disability given the numerous factors in play. For example, a reasonable jury could find that security concerns make transferring Golden to a medium-security facility inappropriate, that a fully accessible maximum-security facility is not available, and that IDOC has done all that it could reasonably do within the confines of the current facility.[5] Thus, Golden's motion for summary judgment must be denied as well.

If the jury finds that the IDOC has not reasonably accommodated Golden's disability, it will then decide what amount of damages to award him. The task of fashioning the appropriate injunctive remedy will be for the Court.

## **IV. Conclusion**

For the reasons stated herein, the individual defendants are dismissed from the case, and both Golden's motion for summary judgment [105] and IDOC's motion for summary judgment [112] are denied. A status hearing will be held on 10/11/16

---

[5] As noted, it is possible that the jury could infer (from the lack of any evidence to the contrary) that the IDOC does not operate a maximum-security facility that is fully accessible. Although the IDOC receives the benefit of such an inference in opposing Plaintiff's summary judgment motion, at trial, a reasonable jury could just as easily conclude that the IDOC's failure to operate a maximum-security facility suitable for housing disabled prisoners who cannot reliably navigate stairs (if that, in fact, is the case) is itself a failure to provide reasonable accommodations.

at 9:00 a.m., at which point the parties should be prepared to set deadlines for pretrial filings, a date for the pretrial conference, and a date for trial.

**IT IS SO ORDERED.**          ENTERED    **9/26/16**

_____
**John Z. Lee
United States District Judge**